**PUBLISHED**
Filed: November 16, 2009

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

STATE AUTO PROPERTY AND
CASUALTY INSURANCE COMPANY, a
South Carolina Corporation,

*Plaintiff-Appellant,*

v.

EASTERN DATA SYSTEMS,
INCORPORATED; EPS NETWORK
SOLUTIONS, INCORPORATED,

*Defendants-Appellees,*

FEDERAL INSURANCE COMPANY,

*Intervenor/Defendant-Appellee.*

No. 08-1481

STATE AUTO PROPERTY AND
CASUALTY INSURANCE COMPANY, a
South Carolina Corporation,

*Plaintiff-Appellee,*

v.

EASTERN DATA SYSTEMS,
INCORPORATED; EPS NETWORK
SOLUTIONS, INCORPORATED,

*Defendants-Appellants,*

FEDERAL INSURANCE COMPANY,

*Intervenor/Defendant-Appellant.*

No. 08-2096

STATE AUTO PROPERTY AND
CASUALTY INSURANCE COMPANY, a
South Carolina Corporation,

*Plaintiff-Appellant,*

v.

EASTERN DATA SYSTEMS,
INCORPORATED; EPS NETWORK
SOLUTIONS, INCORPORATED,

*Defendants-Appellees,*

FEDERAL INSURANCE COMPANY,

*Intervenor/Defendant-Appellee.*

No. 08-2157

ORDER OF CERTIFICATION TO THE
SUPREME COURT OF APPEALS OF WEST VIRGINIA

I. *Questions Certified*

The United States Court of Appeals for the Fourth Circuit, exercising the privilege afforded it by the State of West Virginia, pursuant to the Uniform Certification of Questions of Law Act, W. Va. Code §§ 51-1A-1 to -13, respectfully requests the Supreme Court of Appeals of West Virginia to answer the following question:

> 1. When two corporate entities have merged, does West Virginia Code § 31D-11-1107(a)(3) operate on its face to avoid (or void) an otherwise applicable non-assignment clause in a business auto insurance policy, issued pre-merger to the non-surviving corporation?

An affirmative answer to this question is outcome determinative in the present appeal. Moreover, in our view, there is no controlling appellate decision, constitutional provision, or statute of West Virginia which answers this question. Accordingly, we believe the question appropriate for certification. *See* W. Va. Code § 51-1A-3.

If the Supreme Court of Appeals of West Virginia answers the above stated question in the negative, we respectfully request that the court proceed to answer the following question:

> Would West Virginia Code § 31D-11-1107(a)(3) apply nonetheless if the insurable risks under the business auto insurance policy did not increase post-merger?

As is the case with our first question, in our view, there is no controlling appellate decision, constitutional provision, or

statute of West Virginia which answers this second question. Accordingly, we believe the question appropriate for certification. *See* W. Va. Code § 51-1A-3.

This court acknowledges that the Supreme Court of Appeals of West Virginia may reformulate these questions. *See* W. Va. Code § 51-1A-4, -6(a)(3).

## II.   *Relevant Facts and Relevant Procedural History*

In February 2000, Eastern Data Systems, Inc. (EDSI), an installer of communications wiring, purchased a business auto liability insurance policy, with a $1,000,000.00 limit, from State Auto Insurance Company (State Auto). At the time, EDSI was located in Beckley, West Virginia. In October 2002, Engineering Professional Services (EPS), located in New Jersey, purchased one-hundred percent of EDSI's stock, making EDSI a wholly owned subsidiary of EPS. EDSI continued to operate at its Beckley location.

Effective January 1, 2003, EDSI merged into one of EPS's affiliated operating companies, EPS Network Solutions, Inc. (Network Solutions), giving Network Solutions a West Virginia location of operation. In light of the merger (the Merger), in February 2003, the vehicles previously owned by EDSI were retitled to Network Solutions. Notably, the business auto liability insurance policy originally issued by State Auto to EDSI in February 2000 was renewed until its cancellation in May 2004 (the State Auto BAP) with EDSI listed as the named insured.

On May 26, 2003, Network Solutions employee Burt Kennedy blacked out while driving on company business in Washington State and caused a multiple vehicle accident (the Accident). At the time of the Accident, Burt Kennedy was driving a 1996 Ford van owned by Network Solutions, which van EDSI had owned prior to the Merger. At the time of the

Accident, the State Auto BAP specifically listed the 1996 Ford van on the schedule of covered autos.

At the time of the Accident, EPS also had a business auto insurance policy, with a $1,000,000.00 limit, in force with Federal Insurance Company (the Federal BAP). The parties do not dispute that the Federal BAP also provided coverage for Network Solutions. Federal Insurance Company (Federal) settled all of the personal injury and property damage claims arising from the Accident against itself, EPS, EDSI, Burt Kennedy, and State Auto for a total of $851,510.55. Federal also incurred $1,891.50 in related costs to settle the claims.

Federal then sought contribution from State Auto to reimburse it for one-half of the total settlement amount and one-half of the related costs. State Auto disputed Federal's contribution claim on the basis, *inter alia*, that the State Auto BAP contained a non-assignment clause (the Non-Assignment Clause), which nullified such policy as it pertained to EPS or Network Solutions. The Non-Assignment Clause provided: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured." (J.A. 28). State Auto never received a request to assign the State Auto BAP to Network Solutions or EPS, prior to the Accident.

Federal took the position that the State Auto BAP transferred to Network Solutions by operation of law, on January 1, 2003, pursuant to West Virginia Code § 31D-11-1107(a)(3), which provides, in relevant part: "When a merger takes effect . . . [a]ll property owned by, and every contract right possessed by, each corporation or other entity that merges into the survivor is vested in the survivor without reversion or impairment[.]" *Id.* From here forward, we will refer to this code section as "West Virginia's Merger/Transfer Statute."

On August 15, 2005, State Auto filed the present declaratory judgment action against EDSI and Network Solutions,

seeking a declaration that it has no duty to defend or provide coverage to Network Solutions, EPS, or Burt Kennedy for the damages arising from the Accident. Federal intervened as a defendant and filed a counterclaim against State Auto seeking a declaration that State Auto has a duty to defend and provide coverage to Network Solutions, EPS, and Burt Kennedy. As part of its counterclaim, Federal sought reimbursement for one-half of the total amount that it paid to settle the underlying claims arising from the Accident and one-half of its related costs.

On cross-motions for summary judgment, the district court held in favor of Federal on its counterclaim, reasoning that EDSI's rights under the State Auto BAP transferred to Network Solutions by operation of law, pursuant to West Virginia's Merger/Transfer Statute, despite the existence of the Non-Assignment Clause in the State Auto BAP. In reaching this holding, the district court concluded that State Auto had not forecast sufficient evidence for a reasonable jury to find that the risk of insuring Network Solutions under the State Auto BAP was greater than insuring EDSI under the same policy. With respect to Federal's counterclaim, the district court entered a monetary judgment in favor of Federal for $426,701.00, representing one-half of the total amount that Federal paid to settle the underlying claims arising from the Accident and one-half of its related costs. The district court also denied State Auto's motion for summary judgment and granted summary judgment in favor of Federal, Network Solutions, and EDSI with respect to State Auto's claim for declaratory relief.

State Auto challenges the district court's grant of summary judgment in favor of Federal, Network Solutions, and EDSI with respect to its claim for declaratory relief and the district court's grant of summary judgment in favor of Federal with respect to Federal's counterclaim.

We have already decided that the district court did not err in concluding that State Auto failed to forecast sufficient evi-

dence at summary judgment for a reasonable jury to find that the risks of insuring Network Solutions under the State Auto BAP were greater than the risks of insuring EDSI under the same policy. Accordingly, the certified questions set forth in Part I of this Order of Certification contemplate this decision.

III.  *Contentions of the Parties*

State Auto contended below and continues to contend on appeal that, when two corporate entities merge, West Virginia's Merger/Transfer Statute does not operate on its face to avoid (or void) an otherwise applicable non-assignment clause in a business auto insurance policy, issued pre-merger to the non-surviving corporation. State Auto acknowledges that there are no West Virginia cases directly on point in support of its contention. However, State Auto cites *Smith v. Buege*, 387 S.E.2d 109 (W.Va. 1989), for the proposition that the Supreme Court of Appeals of West Virginia disfavors the transfer of contractual rights under an insurance policy before a loss without consent of the insurer, which proposition, it contends, is consistent with the purpose of non-assignment clauses in insurance policies to protect the insurer from increased risk for which it had not contemplated during underwriting.

Federal, Network Solutions, and EDSI, on the other hand, contend that West Virginia's Merger/Transfer Statute operates on its face to avoid (or void) an otherwise applicable non-assignment clause in a business auto insurance policy, issued pre-merger to the non-surviving corporation. And while these parties also acknowledge the absence of controlling West Virginia case law on the subject, they see no need for it, given their position that the language of West Virginia's Merger/Transfer Statute clearly and unambiguously defeats the Non-Assignment Clause in the State Auto BAP. With respect to *Smith*, Federal, Network Solutions, and EDSI distinguish it on two grounds. First, *Smith* did not address the issue of an assignment or transfer by operation of law, and second, *Smith*

was decided prior to the enactment of West Virginia's Merger/Transfer Statute.

IV.    *Names of Counsel of Record for the Parties*

*Counsel for State Auto*

Jeffrey L. Robinette, Esquire
Lorna M. Waddell, Esquire
The Robinette Legal Group, P.L.L.C.
475 Fairchance Road
Morgantown, W.Va. 26508

*Counsel for Federal, Network Solutions, and EDSI*

Scott W. Andrews, Esquire
Offutt Nord, P.L.L.C.
P.O. Box 2868
949 Third Avenue, Suite 300
Huntington, W.Va. 25728

V.    *Conclusion*

In sum, we conclude that answers to the question(s) certified herein will be determinative of one or more issues in the present appeal, and there is no controlling appellate decision, constitutional provision or statute of West Virginia. Accordingly, pursuant to the privilege made available by the West Virginia Uniform Certification Act, we respectfully:

(1)   Certify the questions stated in Part I. of this Order of Certification to the Supreme Court of Appeals of West Virginia for resolution;

(2)   Order the Clerk of this court to forward to the Supreme Court of Appeals of West Virginia, under the official seal of this court, a copy of this Order of Certification, together with the original or copies of

the record before this court to the extent requested by the Supreme Court of Appeals of West Virginia; and

(3)   Order that any request for all or part of the record be fulfilled by the Clerk of this court simply upon notification from the Clerk of the Supreme Court of Appeals of West Virginia.

This Order of Certification is entered with the concurrences of Judge Agee, United States Circuit Judge, and Judge Margaret B. Seymour, United States District Judge for the District of South Carolina, sitting by designation.

/s/ Clyde H. Hamilton

_____

Clyde H. Hamilton
Senior United States Circuit Judge